**John Crews RAINEY, Plaintiff-Appellant,**

v.

**PAQUET CRUISES, INC., Defendant,**

**Nouvelle Compagnie De Paquetvots, CIE., Defendant-Appellee.**

**No. 503, Docket 82–7507.**

United States Court of Appeals, Second Circuit.

Argued Dec. 17, 1982.

Decided June 8, 1983.

---

**170**

Alexander J. Wulwick, New York City (Siff & Newman, P.C., and L. Kevin Sheridan, New York City, of counsel), for plaintiff-appellant.

James M. Hazen, New York City (McHugh, Leonard & O'Conor, New York City, of counsel), for defendant-appellee.

Before OAKES, VAN GRAAFEILAND and MESKILL, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

John Crews Rainey appeals from a judgment of the United States District Court for the Southern District of New York, Sweet, J., which dismissed appellant's complaint at the close of a bench trial. Appellant had sought to recover damages from Nouvelle Compagnie De Paquetvots, CIE., the owner/operator of the cruise ship M.S. *Mermoz* for injuries sustained by him while a passenger on the ship. For the reasons that follow, we affirm.

Appellant's injuries did not result from the type of occurrence usually associated with a ship at sea. Instead, appellant tripped over a stool while "exuberantly" dancing the "Lindy" in the ship's discotheque. The district court found that the seas were calm and that it "has not been suggested, even inferentially, that it was the ship's motion that caused the stool to be on the dance floor." Because there was no evidence as to how the stool got where it was or how long it had been there, the district court concluded that the defendant was not negligent. Appellant contends that the district court erred in making this determination in that it did not hold appellee to a higher standard than that of reasonable care under the circumstances. We disagree.

We have stated on a number of occasions that an ocean carrier must exercise a very high degree of care for the safety of its passengers. *See, e.g., Moore v. American Scantic Line, Inc.,* 121 F.2d 767, 768 (2d Cir.1941). Respected commentators long have contended, however, that "[t]echnically the 'high degree' instruction is incorrect as a matter of principle ...." "What is required", they say, "is merely the conduct of the reasonable man of ordinary prudence under the circumstances, and the greater danger, or the greater responsibility, is merely one of the circumstances, demanding only an increased amount of care." Prosser, *The Law of Torts* § 34, at 181 (4th ed. 1971); *see* 2 Harper & James, *The Law*

of Torts § 16.13, at 946 n. 13 (1956). In some instances, reasonable care under the circumstances may be a very high degree of care; in other instances, it may be something less. In *Pratt v. North German Lloyd S.S. Co.*, 184 F. 303 (2d Cir.1911), plaintiff fell on a wet deck. The trial court charged that the defendant was bound to exercise reasonable care under the circumstances but refused to charge that the shipowner owed plaintiff "very great care". The Court of Appeals said in affirming:

> "We think the charge was right. 'Very great care' is an unmeaning phrase, and the jury in determining what was reasonable care with reference to the circumstances would necessarily determine whether it was great or very great. Such expressions as 'the utmost care' or 'the highest degree of care' and so forth are appropriate to the seaworthiness or roadworthiness of the vehicle of transportation, or to things inherently dangerous."

*Id.* at 304.

There is no sound reason to require that a carrier exercise a high degree of care for those trifling dangers which a passenger meets "in the same way and to the same extent as he meets them daily in his home or in his office or on the street, and from which he easily and completely habitually protects himself." *Livingston v. Atlantic Coast Line R. Co.*, 28 F.2d 563, 566 (4th Cir.1928) (citing *Bassell v. Hines*, 269 F. 231, 232 (6th Cir.1920)). In *Valeri v. Pullman Co.*, 218 F. 519 (S.D.N.Y.1914), then District Judge Augustus Hand held that the defendant, while serving food in its buffet car, "[differed] in no wise from any other person keeping a restaurant," *id.* at 520, and its obligation was to "exercise the reasonable care of a prudent man in furnishing and serving food," *id.* at 524.

In *McLean v. Triboro Coach Corp.*, 302 N.Y. 49, 51, 96 N.E.2d 83 (1950), Judge Fuld wrote that negligence generally is defined as the failure to use "the care which the law's reasonably prudent man should use under the circumstances of a particular case." "That being so", he wrote, "it may well be asked whether it is ever practicable for one to use more care than one reasonably can ...." He suggested that the Court reexamine those decisions which hold that a carrier owes a "high", a "very high" or the "highest" degree of care in transporting its passengers. New York courts since have adopted what this Court has termed "the logical view" that there can be only one degree of care, *i.e.*, reasonable care under the circumstances. *Gerard v. American Airlines, Inc.*, 272 F.2d 35, 36 (2d Cir. 1959). *See Thomas v. Central Greyhound Lines*, 6 A.D.2d 649, 652–53, 180 N.Y.S.2d 461 (1958); *Gallin v. Delta Air Lines, Inc.*, 106 Misc.2d 477, 480–81, 434 N.Y.S.2d 316 (1980). *See also Basso v. Miller*, 40 N.Y.2d 233, 386 N.Y.S.2d 564, 352 N.E.2d 868 (1976).

A number of other states take the same "logical view", *see* Elliot, *Degrees of Negligence*, 6 S.Cal.L.Rev. 91, 124–27 (1933), and it has been adopted by the Supreme Court in the field of admiralty. In *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959), the Court was called upon to decide whether a shipowner owed a lesser duty of care to a licensee than it did to an invitee. The Court held that "the owner of a ship in navigable waters owes to all who are on board for purposes not inimical to his legitimate interests the duty of exercising reasonable care under the circumstances of each case." *Id.* at 632, 79 S.Ct. at 410. *See also Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 163–64 n. 10, 101 S.Ct. 1614, 1620 n. 10, 68 L.Ed.2d 1 (1981).

The Fifth Circuit appears to be the only one which squarely has considered whether the reasonable-care-under-the-circumstances rule of *Kermarec* is applicable in passenger cases, and it has answered in the affirmative. *See Gibboney v. Wright,* 517 F.2d 1054, 1059 (5th Cir.1975); *Tullis v. Fidelity and Casualty Co.*, 397 F.2d 22, 23–24 (5th Cir.1968).[1] We have not yet confronted the issue. The only passenger inju-

---

1. The Eighth Circuit appears to have adopted the rule without comment. *See Urian v. Mil-* *stead,* 473 F.2d 948, 951 (8th Cir.1973).

ry case in our Court since *Kermarec* was *Alpert v. Zim Lines*, 370 F.2d 115 (2d Cir. 1966). There, plaintiff, a 63 year old cruise ship passenger, with a patent pre-existing infirmity which caused her to limp, was injured when rough seas caused the ship to lurch as she was rising from a chair. The single question briefed and argued was whether the defendant had sufficient constructive notice of plaintiff's disability so that summary judgment in the defendant's favor should not have been granted. The defendant did not dispute that, if it knew that plaintiff had physical disabilities, it was required to exercise such higher degree of care—including giving special assistance—as was reasonably necessary to insure plaintiff's safety in view of her disabilities. *Id.* at 116. We held that there were genuine issues as to material facts, including the state of the weather, and that, therefore, summary judgment was improper.

In the instant case, the district court cited *Kermarec* in support of its holding, and the applicability of that case is now before us. Following the lead of the Fifth Circuit, we hold that the *Kermarec* rule of reasonable care under the circumstances is applicable in passenger cases. The extent to which the circumstances surrounding maritime travel are different from those encountered in daily life and involve more danger to the passenger, will determine how high a degree of care is reasonable in each case. In the absence of any proof that appellee had actual or constructive notice of the presence of the stool, a condition in no way peculiar to maritime travel, the district court did not err in dismissing the complaint. *See Demgard v. United States*, 94 F.Supp. 309, 310 (S.D.N.Y.1950); *Dann v. Compagnie Generale Transatlantique*, 45 F.Supp. 225, 226 (E.D.N.Y.1942).

Finding no merit in appellant's remaining contentions, we affirm.

OAKES, Circuit Judge (concurring):

I concur in the basic proposition that as a matter of law the *standard* of care is no different for a carrier than it is for anyone else—the duty is one of reasonable care under the circumstances. *See* 2 F. Harper & F. James, The Law of Torts § 16.14 (1956). The circumstances of each case of course vary, and the greater the degree of the carrier's control or the lesser the degree of the passenger's control over the factors causative of the injury, the easier it is to find negligence. Thus, the phrase "highest degree of care" and its variations are useful only insofar as they call a jury's attention to the relative extent of control exercised or exercisable by the carrier so as to prevent or avoid an accident. Where the trier of fact is a judge to whom negligence is a familiar concept, any phrase suggesting degrees of care owed is at best superfluous, at worst confusing. This being a non-jury case, with the carrier not being charged with, e.g., causing the ship to veer suddenly for no reason, but rather being charged with negligence in permitting a dance floor to have a foreign obstacle on it, concealed by its size, the composition of the floor and the semi-darkness, to talk in terms of degrees of care owed makes no sense whatsoever. The vessel owner or carrier in this situation is in no different position from that of a possessor of land as to licensees and invitees, Restatement (Second) of Torts §§ 342, 343, 343A (1965).

Applying that standard to this case, I agree that the trial judge's finding of no negligence was not clearly erroneous. While the judge, inadvertently I think, referred to the stool on the disco dance floor as three feet high when the only evidence was that it was twelve inches to eighteen inches high, he was careful to distinguish situations in which either by lack of supervision of the dance floor, failure to inspect it, or even the motion of the vessel in the sea, the stool came, was placed, or remained upon the dance floor, thereby causing injury. The judge did not explicitly consider the possibility that the stool was placed on the dance floor during the movies that were shown in the discotheque before the dancing started—a plausible inference given the fact that there were about twelve such stools, regularly used for such purpose—and

that it might well have been negligent for the vessel's employees to fail to inspect the dance floor and remove any remaining stools before turning the lights out for disco dancing. But this inference was by no means a necessary one from the facts proved at trial, though I believe it quite permissible; one suspects that counsel, instead of being able to adduce facts from ship personnel, passengers or other sources developing this, his appellate theory of the case, was required to rely upon the "highest duty of care" legal concept, such as it is. Be this as it may, as the trier of fact Judge Sweet was left, in his words, with the limited question whether "the mere presence [of the stool] at an isolated moment in time, without any further evidence of how it got there or how long the stool was on the dance floor" constituted negligence. Since he could not properly find that it was negligent *per se* to have a movable stool in a discotheque, even on a ship on the high seas, he quite understandably found no negligence. I cannot fault him on this, though another trier of fact might have concluded otherwise. I therefore concur in the judgment.